UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JASON BAXTER, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CAUSE OF ACTION NO. |
| | § | 6:25-cv-143 |
| TY HARDY, | § | |
| | § | |
| *Defendant* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jason Baxter brings this 42 U.S.C. § 1983 case against Hill County Sheriff's Deputy Ty Hardy for the excessive force he inflicted on Plaintiff.

### I.   PARTIES

1. Plaintiff Jason Baxter is a resident of Johnson County, Texas.

2. Defendant Ty Hardy is a deputy with the Hill County Sheriff's Office and is sued in his individual capacity for compensatory and punitive damages. At all relevant times, Ty Hardy was acting under color of law as a Hill County Sheriff's Deputy. He can be served with process at 406 Hall St., Hillsboro, Texas 76645 or wherever he may be found. *Service is hereby requested.*

### II.   JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

4. This Court has general personal jurisdiction over Defendant Ty Hardy as he works in Hill County, Texas and is believed to reside in Bosque County, Texas, both of which are within the Western District of Texas.

5. This Court has specific *in personam* jurisdiction over Defendant because this case

arises out of his conduct that injured Plaintiff which occurred in Hill County, Texas, which is within the Western District of Texas.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as all relevant events occurred in this division.

### III.    FACTS

7. On April 25, 2024, Plaintiff Jason Baxter, an individual suffering from PTSD and mental illness was discussing a potential end to his marriage. Distraught and overwhelmed, and obviously suffering mentally, Baxter opened the door of the car he was in and fell onto the road off Highway 66 as his wife, Teri Baxter ("Teri"), was driving them to her daughter's softball game.

8. Though Baxter suffered abrasions from the road, he was not seriously injured by falling out of the moving vehicle.

9. Even still, Teri was concerned. She immediately pulled over and called 911.

10. Law enforcement officers from several surrounding jurisdictions were dispatched for a "public service" or "check welfare" call for a person with mental illness and responded, including Deputy Ty Hardy of the Hill County Sheriff's Office. Emergency medical personnel also responded.

11. On information and belief, the law enforcement officers and the emergency medical personnel who responded were familiar with Baxter as they had responded to him before. They knew Baxter was an Army veteran with PTSD, knew that Baxter had not been violent with officers, and knew that Baxter had cooperated with them when they detained him for mental health treatment in the past.

12. Deputy Hardy was the first law enforcement officer on scene. When he arrived, Baxter was laying on his stomach by the side of the road with his arms cradling his head. The car

he had fallen out of was stopped just a foot or so further down the road. Teri stood between the car and Baxter. The scene was secure and there was no danger posed by Baxter to anyone.

13. Moreover, Highway 66 where Baxter lay in the grass and where Teri stopped her car was not a busy road. No other cars drove by after Deputy Hardy arrived, other than those of law enforcement or medical services responding to the scene.

14. Deputy Hardy walked up to Baxter and asked if he was hurt. Baxter did not respond.

15. Teri told Deputy Hardy what had happened. She also told Deputy Hardy that Baxter had no weapons on him and there were none in her car.

16. Essentially acknowledging the lack of danger, Deputy Hardy then turned his back to Baxter, returned to his vehicle, radioed that it was safe for EMS to approach, and walked back to Baxter.

17. Deputy Hardy saw blood on Baxter's head and face and asked him where else he was hurting. Baxter responded that his back and legs also hurt.

18. Firefighter-EMTs arrived on a firetruck and began rendering aid to Baxter.

19. Deputy Hardy again walked away from Baxter, leaving him talking to the Firefighter-EMTs, and went to stand in the front of the car with Teri to get more information from her.

20. Teri explained to Deputy Hardy they were going through a divorce, and Baxter had been upset about the divorce for most of the day. Teri said they were having a "little" argument when he suddenly opened the door and fell from the car, hitting the roadside and rolling.

21. At no point did Terri say or suggest that Baxter had been violent towards her or threatened violence towards her.

22. An officer from the Itasca Police Department next arrived to the scene and joined the discussion with Teri and Deputy Hardy. During the conversation, the Firefighter-EMTs continued to peacefully render aid to Baxter.

23. After several minutes, Baxter asked for Teri to come see him and help him. Teri asked Deputy Hardy if she could go over to him. Deputy Hardy refused to allow her to go to her husband.

24. Additional Firefighter-EMTs arrived and began assisting Baxter.

25. As Teri was prevented from coming to help him by Deputy Hardy, Baxter got up from the ground and slowly walked over to talk to Teri, who remained next to Deputy Hardy and near a City of Itasca police officer.

26. Deputy Hardy was facing Baxter as he approached and saw that Baxter's hands were empty by his side as he walked.

27. Baxter did not do or say anything threatening as he approached Terri and Deputy Hardy.

28. Thought he had no cause to do so, Deputy Hardy told Baxter to stop once he was a few feet away. Baxter complied.

29. Baxter calmly asked to talk to Teri to which Deputy Hardy refused and responded that he needed to let EMS see him instead.

30. Baxter calmly responded that he was fine and wanted to talk to Teri.

31. Deputy Hardy told him to talk to her from where he was.

32. Baxter then asked to talk to Teri in private, to which Hardy replied that he (Hardy) was not going to walk away from Teri.

33. Baxter said that was fine and began to walk past Hardy to Teri.

34. At no time during the incident had Teri expressed that Baxter had made any kind of threat to her, that he had hurt her, or that she was afraid of him.

35. Baxter had committed no crime and Deputy Hardy had no cause to detain Baxter by force.

36. Nonetheless, Deputy Hardy placed his hand on Baxter's chest and told him to stand back, and actually pushed Baxter back a few steps.

37. Surprised by the force, Baxter tried again to calmly walk towards Teri. Deputy Hardy saw that Baxter's cell phone was in one hand and his other was empty and open at his side.

38. For no legitimate reason, Deputy Hardy then shoved Baxter onto the hood of Terri's car. Once Baxter's back hit the car hood, the City of Itasca police officer grabbed his right arm. Deputy Hardy then grabbed Baxter with both hands while the Itasca police officer continued to control Baxter's right arm.

39. Deputy Hardy then inexplicably punched Baxter in the chest for no justifiable reason and threatened to "JPX the shit out of" Baxter.

40. A "JPX" is a pepper-ball gun produced by JPX International that shoots highly concentrated balls of OC (oleoresin capsicum) pepper at 405 mph.

41. Deputy Hardy knew the JPX gun was dangerous and could blind its target.

42. According to the manufacturer of the JPX gun, the minimum safe distance is five feet from the tip of the magazine to the target.

43. At the time Deputy Hardy threatened to "JPX" Baxter, Hardy and the City of Itasca police officer already had Baxter pinned on his back on the hood of the car with both arms pinned up next to his head. He was closer than five feet from Baxter.

44. Deputy Hardy placed a handcuff on Baxter's left wrist, pulled Baxter forward, and then threw Baxter on the ground.

45. Baxter landed on right hand and knees, with Deputy Hardy still holding onto his left wrist and forearm.

46. The City of Itasca officer grabbed Baxter's legs and pulled them back at the same time Deputy Hardy grabbed Baxter's sweatshirt behind his neck and pulled forward, effectively flattening Baxter onto his stomach.

47. Baxter grabbed a hold of the extra material on Deputy Hardy's pantleg near his ankle for support. Baxter did not pull on the material but laid unmoving, simply holding onto the fabric.

48. Deputy Hardy yelled at Baxter to let go of him.

49. The City of Itasca police officer continued to hold on to Baxter's ankles. Baxter did not make any attempt to free his legs from the City of Itasca officer's grip.

50. The City of Itasca officer then called over one of the Firefighter-EMTs who knelt on Baxter's legs. Baxter did not try to get up or make any attempt to free his legs from under the Firefighter-EMT.

51. Deputy Hardy reiterated his threat of abuse and told Baxter to let go or he would "JPX" him.

52. Baxter did as instructed and let go.

53. Despite the fact that Deputy Hardy recognized Baxter complied with his command to let him go, Deputy Hardy nonetheless drew, pointed and fired the JPX gun directly at and into Baxter's face from just a few feet away. The shot struck Baxter in his eye at approximately 405 mph.

54. Deputy Hardy fired the dangerous weapon from much closer than the manufacturer's expressed minimum safe discharge distance.

55. Baxter lay on the ground in agonizing pain from the shooting.

56. At the time Deputy Hardy fired the JPX gun at Baxter's eye, Baxter lay on the ground on his stomach with his left arm controlled by Hardy. Deputy Hardy saw that Baxter still had a firefighter pinning his legs and saw his right arm flat and unmoving on the ground.

57. Baxter was not struggling to get up and had made no attempt to pull his left arm from Deputy Hardy or free his legs from the firefighter kneeling on them. Baxter was a danger to no one.

58. After the torturous shooting, Baxter lay limp, groaned loudly in significant pain, and exclaimed he been blinded.

59. As a direct and proximate consequence of Deputy Hardy's dangerous and brutal use of the JPX weapon, Baxter has permanently lost sight in his left eye.

## IV.   CAUSES OF ACTION

### A.   42 U.S.C. § 1983 Excessive Force against Defendant Hardy

60. Plaintiff incorporates all of the previous allegations as if alleged herein and further alleges as follows:

61. Defendant Hill County Sheriff's Deputy Ty Hardy, while acting under color of law at all relevant times, used excessive force on Baxter when Baxter posed no danger to anyone.

62. Defendant Hardy's use of force was wholly excessive to any conceivable need, objectively unreasonably in light of clearly established law, and directly caused Mr. Thomas to suffer serious injuries. Therefore, Defendant Hardy violated Baxter's clearly established Fourth Amendment right to be free from excessive force.

63. As a direct and proximate result of Defendant Hardy's actions excessive use of force with a dangerous weapon, Baxter suffered significant injuries.

64. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983.

### B. Punitive / Exemplary Damages as to Defendant Hardy

65. Plaintiff incorporates all of the foregoing as if alleged herein and further alleges as follows:

66. Officer Hardy's conduct was egregious, reckless, and endangered Baxter and the community. Plaintiff, therefore, in hopes of deterring future acts of violence and retaliation like the ones he suffered, seeks punitive or exemplary damages as to Officer Hardy.

67. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983.

### V. DAMAGES

68. Plaintiff seeks the following damages:

   a. Past and future medical expenses;

   b. Past and future economic damages;

   c. Past and future impairment;

   d. Past and future disfigurement;

   e. Past and future physical pain and mental anguish;

   f. Exemplary damages;

   g. Attorneys' fees; and

   h. Pre-and post-judgment interest at the highest rates allowed under the law.

### V. JURY DEMAND

69. Plaintiff respectfully requests a trial by jury and has tendered the requisite fee.

## VI. ATTORNEYS' FEES

70. Plaintiff seeks all reasonable and necessary attorneys' fees incurred in prosecuting this action and defending his rights, pursuant to 42 U.S.C. § 1988.

## VII. PRAYER FOR RELIEF

71. To right this grave injustice, Plaintiff requests the Court:

    a. Award compensatory damages;

    b. Award punitive damages against Ty Hardy individually;

    c. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

    d. Award pre-judgment and post-judgment interest at the highest rate allowable under the law; and,

    e. Award and grant such other just relief as the Court deems proper.

Dated: April 14, 2025                                             Respectfully submitted,

                                              **EDWARDS LAW**
603 West 17th Street
Austin, Texas 78701
Tel. 512-623-7727
Fax. 512-623-7729

By   /s/ Jeff Edwards
      JEFF EDWARDS
      State Bar No. 24014406
      jeff@edwards-law.com
      MIKE SINGLEY
      State Bar No. 00794642
      mike@edwards-law.com
      LISA SNEAD
      State Bar No. 24062204
      lisa@edwards-law.com
      DAVID JAMES
      State Bar No. 24092572
      david@edwards-law.com
      PAUL SAMUEL
      State Bar No. 24124463
      paul@edwards-law.com

**Feltoon Law, PLLC**
2520 S I-35 Frontage Rd. #200
Austin, TX 78704
Texas Bar No. 24123424
Tel. (737) 281-9100

By  /s/ Jason Feltoon
Jason Feltoon
State Bar No. 24123424
Jason@feltoon.law

**ATTORNEYS FOR PLAINTIFF**